## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JESSE S. VELASQUEZ,**

        **Plaintiff,**

v.

**Case No. 13-1463-DDC-KMH**

**PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION,**

        **Defendant.**

_____

## MEMORANDUM AND ORDER

Plaintiff Jesse S. Velasquez brings this employment discrimination lawsuit against defendant Philips Electronics North America Corporation, asserting claims of: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (2) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and (4) retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. 33). For the reasons explained below, the Court grants defendant's Motion for Summary Judgment.

### I.    Uncontroverted Facts

The following facts have been stipulated by the parties in the Pretrial Order (Doc. 32), are uncontroverted, or, where controverted, are stated in the light most favorable to plaintiff, the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

1

### *Plaintiff's Employment*

Plaintiff was born in North Dakota in 1944, and has lived in the United States his entire life. Plaintiff's national origin is Mexican. Plaintiff began working for defendant in 1978. Other than occasional furloughs, defendant employed plaintiff continuously from 1978 until April 15, 2013. Plaintiff worked at defendant's Salina, Kansas facility, which manufactures linear fluorescent lamps. During the time periods relevant to this lawsuit, defendant employed plaintiff as a Mechanic II in the fixture room, which is a fixture shop for production lines and maintenance. As a Mechanic II, plaintiff's job duties included rebuilding and repairing mechanical parts and motors.

Defendant's policies allowed plaintiff two 15-minute paid rest breaks and two 30-minute unpaid lunch breaks per shift. Using the restroom is not considered break time. The time for taking breaks was flexible, depending on the company's needs and whether plaintiff was in the middle of a project. If the line was down and needed his help, plaintiff would work all day without a break. On one occasion, plaintiff's supervisor allowed him to take a forty-five minute break to talk about plaintiff's work accomplishments.

### *Plaintiff's Medical Condition*

In 2010, plaintiff was diagnosed with kidney failure and type 2 diabetes. Plaintiff had surgery in 2010, and defendant accommodated his post-surgery hospitalization, which lasted approximately three weeks. Defendant also accommodated all of plaintiff's other absences from work for his medical condition.

Plaintiff manages his kidney failure through dialysis and medication. Defendant accommodated plaintiff's medical conditions at work in several ways. When plaintiff was diagnosed with kidney failure initially, he did his own dialysis, which took approximately thirty

minutes to complete per day and required a clean location.  Defendant accommodated plaintiff's self-dialysis at work by permitting him to use a private storage room in the office during one of his 30-minute meal breaks.  Later, plaintiff's doctor instructed plaintiff to start doing dialysis at the hospital, and defendant permitted plaintiff to rearrange his work schedule to accommodate his dialysis schedule.  This schedule change meant that plaintiff no longer could work on Fridays.

Defendant also accommodated plaintiff's kidney failure by permitting him to use a golf cart to move around the facility.  After receiving his diagnosis, plaintiff suffered from fatigue and was unable to walk throughout the entire facility.  Plaintiff therefore asked his supervisor to allow him to use a golf cart.  The supervisor initially denied the request, saying that if he let plaintiff use a golf cart then every other employee would want to use one.  Two days later, however, plaintiff's supervisor told him that he could use a golf cart anytime he wanted.

Defendant allowed plaintiff to sit down at his work station as needed, but because each station in the fixture room already contained chairs, plaintiff did not need to request this accommodation.  Defendant also permitted plaintiff to take short-term disability leave at least twice.

On or about January 4, 2012, plaintiff submitted a doctor's note stating he could not operate a forklift or use a stepstool or ladder.  Defendant accommodated these restrictions.  On or about July 10, 2012, plaintiff submitted a doctor's note stating he could not climb ladders, walk over 15 minutes per hour, lift more than 10 pounds, or operate a forklift.  Defendant accommodated these additional restrictions.  Defendant made every accommodation plaintiff requested.

With the accommodations defendant provided, plaintiff was able to manage his kidney failure and diabetes effectively.  Plaintiff's kidney failure and diabetes did not affect his ability to perform his duties as a Mechanic II, and no one working for defendant has ever said anything derogatory about plaintiff's kidney failure or diabetes.

### Plaintiff's FMLA Leave

During his employment with defendant, plaintiff made three requests for FMLA leave. Plaintiff's discussions with defendant's management about FMLA were very positive.  Plaintiff told Tom Harmon, a management employee, that his situation was bad and that he required surgeries.  Defendant granted plaintiff intermittent FMLA leave from February 2011 through February 2012 for kidney failure.  Defendant denied plaintiff FMLA leave in March 2012 because he had already exhausted his leave.  Defendant denied plaintiff FMLA leave again in October 2012 because he did not submit a medical certification.  Plaintiff does not allege that either decision to FMLA leave was inappropriate.

When plaintiff returned from FMLA leave in 2012, he began having his work recalled. Plaintiff had never experienced recalls before his leave, and plaintiff believes that a coworker, Scott Long, was sabotaging his work.

### Plaintiff's Final Written Warning

On or about November 18, 2012, a supervisor asked plaintiff to readjust a coating head that failed to meet specifications.  Instead of readjusting the part as the supervisor requested, plaintiff took the part to the Mastergroup (the name for the lead position between plaintiff and his supervisor).  Plaintiff asked the Mastergroup to sign a red ticket indicating that the part was out of service, but the Mastergroup declined plaintiff's request.  Plaintiff was issued a Final Written Warning on November 20, 2012, after management concluded that plaintiff told the

4

Mastergroup to "just piss on it"[1] and then walked away and placed the defective coating head

back in the supplies cabinet.  The Final Written Warning provided that plaintiff's actions

violated defendant's policies against harassment, giving false information, and absence from his

assigned department without permission or logical reason.  Defendant also placed plaintiff on a

Performance Improvement Plan on November 20, 2012, and plaintiff understood that defendant

could fire him if another incident occurred.  Plaintiff complied with the Performance

Improvement Plan and stopped having weekly meetings with his supervisor to discuss his

compliance with the Performance Improvement Plan in February 2013.

In January and April 2013, plaintiff was involved in verbal altercations with two other

coworkers.  Plaintiff received his last annual evaluation on January 31, 2013.  In that evaluation,

plaintiff received an overall rating of "Meets Expectations."  Plaintiff received his evaluation for

the prior year on January 26, 2012.  In that evaluation, plaintiff received an overall rating of

"Exceeds Expectations" and received that same rating in three out of five performance

categories.

### Plaintiff's Termination

Defendant terminated plaintiff's employment on April 15, 2013, for taking excessive

breaks while on a Final Written Warning.  The following individuals participated in the decision

to terminate plaintiff's employment:  Bryan Herwig (who was 32 at the time of plaintiff's

termination), John Moyer (who was 37 at the time of plaintiff's termination), Jerry Unruh (who

was 63 at the time of plaintiff's termination), Chris Montgomery (who was 40 at the time of

plaintiff's termination), Dan Mendicina (who was 47 at the time of plaintiff's termination), and

Tom Harmon (who was 51 at the time of plaintiff's termination).

---

[1]       Plaintiff denies that he made this comment.

Plaintiff does not recall what breaks he took on April 11, 13-14, 2013, and admits that he may have exceeded his allotted time for breaks.  But plaintiff asserts that his medical condition required frequent use of the restroom.  Plaintiff admits that it was not unreasonable for defendant to conclude that he violated the break policy because he occasionally exceeded his allotted break times.

John Moyer, who supervised plaintiff, collected information about plaintiff's use of break time.  When Mr. Moyer learned that plaintiff might be violating the break policy, he never asked plaintiff if he was taking excessive breaks because he thought plaintiff would not tell him the truth, even though he could never recall a time that plaintiff had lied to him.  Mr. Moyer also never had any prior concerns or suspicions that plaintiff had violated the break policy.  Mr. Moyer admits that an explanation could have existed for some of the documented break times that would not violate the company policy.  Mr. Moyer concedes he does not know whether defendant gave plaintiff an opportunity to explain before defendant terminated his employment.  After collecting the information about plaintiff's use of break time, Mr. Moyer met with his supervisor, Tom Harmon, and the head of Human Resources, Bryan Herwig, to discuss the information.  In addition, legal counsel participated in that meeting by telephone.  Mr. Moyer has never been involved in terminating an employee for violation of the break policy, other than plaintiff's termination.

Before September 2012, Jerry Unruh supervised plaintiff.  Mr. Unruh's understanding of the break policy is that breaks are not monitored unless someone complains.  In plaintiff's situation, Mr. Unruh recalls that several people complained about plaintiff's excessive use of break time, but the only person he can remember complaining is Lucas Nease.  Mr. Unruh does not remember if he typically would confront an accused employee before beginning a formal

investigation.  Mr. Unruh recorded plaintiff's break times in connection with his termination, but he does not remember where he saw plaintiff or what he was doing during most of the times that he recorded.  He does not remember specifically if plaintiff was leaving the bathroom, break room, or fixture room at the times recorded.  He also agreed that restroom use is not considered break time, and if plaintiff used the restroom after taking a 15 minute break, it would not violate the break policy.  Mr. Unruh also allowed his employees to leave the fixture room to visit with customers or ask questions during work time.

Terry Kilgore is a shift supervisor in the lamp plant.  Typically, he did not supervise plaintiff or have any day-to-day interaction with him.  However, Mr. Moyer and Mr. Unruh asked Mr. Kilgore to monitor plaintiff's break time usage on a weekend shift.  Mr. Kilgore spent more than two hours monitoring plaintiff's break time during that shift even though he was the only salaried employee in the facility that day and needed to be available to answer questions and handle phone calls.  Mr. Kilgore observed plaintiff taking his breaks in the break room at the same table.  In his nearly four years of employment, Mr. Kilgore has not been involved in the termination of any employees for violating the break policy, other than plaintiff.

An individual who complained about plaintiff's use of break time, Lucas Nease, provided two different statements to defendant on April 11 and April 12, 2013, a few days before defendant terminated plaintiff's employment.  In those statements, Nease reported that plaintiff had complained to him about Scott Long being a racist and that Mr. Nease thought plaintiff was trying to get Mr. Long fired.

Plaintiff has no personal knowledge about how the termination decisionmaking process works at defendant.  Plaintiff has no personal knowledge about how the decision was made to terminate his employment.  Plaintiff has no personal knowledge that defendant fabricated any

records about his termination.  Plaintiff does not believe that defendant terminated his

employment because he took FMLA leave.

### Other Employees Terminated or Disciplined for Violating the Break Policy

Between January 1, 2010 and December 31, 2013, defendant terminated ten employees in

whole or in part for violating the break policy.  All but two of these employees were at least 45

years old at the time of termination and two of these terminated employees were in their sixties.

The average age of these employees was approximately 46.5 years old.  Defendant has

terminated the employment of plaintiff, Mario Gallejos, Gerald Ridgeway, Alan Wilson, Rick

Overkamp, Son Tran, Harold Vignery, Tim Bobbett, Chris Colosimo, and Todd Furgison in

whole or in part because of excessive breaks.  Mr. Ridgeway, Mr. Wilson, Mr. Overkamp, Mr.

Bobbett, Mr. Colosimo, and Mr. Furgison are Caucasian.  Mr. Ridgeway was under the age of 40

at the time of his termination.  None of the individuals have any known disability.  Mr. Bobbett,

who was 45 years old at the time of his termination, and Mr. Tran, who was 50 years old when

terminated and Asian, had applied for or taken FMLA leave during the year preceding their

terminations.

Between January 1, 2009 and December 31, 2013, defendant disciplined approximately

twenty-one employees for abusing the break rules, with four of those employees being

disciplined on multiple occasions for this same reason.  All of the employees who received

discipline less than termination were Caucasian.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  When it applies this standard, the Court views the evidence and draws

inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co*., 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III.   Analysis

Defendant moves for summary judgment on each of plaintiff's four claims:  (1) age discrimination in violation of the ADEA; (2) national origin discrimination in violation of Title VII; (3) disability discrimination in violation of the ADA; and (4) retaliation in violation of the FMLA.  Where, as here, a plaintiff has not alleged any direct evidence of discrimination, plaintiff may use circumstantial evidence to prove discrimination under Title VII, the ADEA, and the ADA and retaliation under the FMLA with the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192, 1193 (10th Cir. 2012) (Title VII and FMLA claims); *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (Title VII and ADEA claims); *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 747 (10th Cir. 1999) (ADA claim).

The *McDonnell Douglas* framework involves a three-step analysis.  *Garrett*, 305 F.3d at 1216.  First, a plaintiff must provide a prima facie case of discrimination.  *Id.*; *see also Khalik*, 671 F.3d at 1192.  If plaintiff meets this burden, then the burden shifts to defendant to produce a legitimate, non-discriminatory reason for the adverse employment action.  *Khalik*, 671 F.3d at 1192 (citing *Garrett*, 305 F.3d at 1216).  If defendant satisfies that burden, the burden then shifts back to plaintiff to show that plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext.  *Id.* (citing *Garrett*, 305 F.3d at 1216).

Defendant asserts that plaintiff's claims fail under the *McDonnell Douglas* test for two reasons.  First, defendant argues that plaintiff cannot establish a prima facie case to support each of his four claims, and his claims therefore fail as a matter of law.  Second, defendant contends that, even if plaintiff establishes a prima facie case, defendant has proffered a legitimate, non-discriminatory reason for plaintiff's termination, and plaintiff cannot establish that defendant's explanation is pretext.  The Court addresses each of these arguments in turn below.

### A.  ADEA Prima Facie Case

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (citation omitted).  Therefore, to establish an age discrimination claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Id.* (citations omitted); *see also Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011) ("In other words, we must determine whether age was a 'but-for' cause or 'the factor that made a difference.'" (citations omitted)).

The Supreme Court's articulation of an ADEA plaintiff's burden of proof in *Gross* does not displace the continued application of the *McDonnell Douglas* framework to ADEA claims.  *Jones v. Okla. Pub. Schs.*, 617 F.3d 1273, 1278–79 (10th Cir. 2010).  Under this framework, the Tenth Circuit has adopted a four-part test for establishing a prima facie case of discrimination under the ADEA.  In *Jones*, the Circuit held that a plaintiff must show:  (1) he is a member of the class protected by the ADEA; (2) he suffered an adverse employment action; (3) he was

qualified for the position; and (4) he was treated less favorably than others not in the protected class.  617 F.3d at 1279 (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998)); *see also Hutchins v. Cessna Aircraft Co.*, ___ F. App'x ___, 2014 WL 5472172, at *2 (10th Cir. Oct. 30, 2014).  Later that same year the Circuit explained the four elements slightly differently, stating that an ADEA plaintiff "must ordinarily prove that: (1) [he] is within the protected age group; (2) [he] was doing satisfactory work; (3) [he] was discharged; and (4) [his] position was filled by a younger person."  *Kosak v. Catholic Health Initiatives of Colo.*, 400 F. App'x 363, 366 (10th Cir. 2010) (citing *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004)); *see also Zoutomou v. Copper*, 550 F. App'x 647, 651 (10th Cir. 2013) (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).  Then, in a 2012 opinion, the Tenth Circuit explained that a plaintiff establishes a prima facie case of age discrimination "by showing (1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination."  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).

Under any of these tests, the elements of a prima facie case "are neither rigid nor mechanistic."  *Adamson*, 514 F.3d at 1146 (citation omitted).  Instead, "their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor."  *Id.* (citation omitted).  And, a plaintiff's burden of proving a prima facie case is "'not onerous.'"  *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

For purposes of summary judgment only, the parties agree that plaintiff has established the first three prongs of the prima facie test—that is, (1) plaintiff is a member of the class

protected by the ADEA, (2) he suffered an adverse employment action when defendant terminated his employment, and (3) he was qualified for his employment position.  But the parties dispute what plaintiff is required to show under the fourth prong.  Defendant asserts that plaintiff must show his position was filled by a younger person, as required by the Tenth Circuit's formulation of the prima facie elements in *Kosak*.  Indeed, in *Kosak*, the Tenth Circuit stated:  "We have repeatedly emphasized that an ADEA plaintiff must *ordinarily* show that her position was filled by a younger person in order to make a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework."  *Kosak*, 400 F. App'x at 366 (citations omitted) (emphasis added).  Notably, the Circuit stated that this is "ordinarily" the standard.  In that same opinion, the Circuit recognized that a plaintiff may support a prima facie case of age discrimination by relying on pretext evidence "'if it indeed gives rise to an inference of actionable discriminatory intent.'"  *Id.* at 367 (quoting *Adamson*, 514 F.3d at 1151).  This language is similar to the burden plaintiff here claims he must satisfy—he contends the fourth element of an ADEA prima facie case requires him to show that he was terminated under circumstances giving rise to an inference of discrimination.  Doc. 38 at 13 (citing *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002)); *see also Daniels*, 701 F.3d at 627; *Howard v. Garage Door Grp., Inc.*, 136 F. App'x 108, 112 (10th Cir. 2005).

A review of other cases within the Tenth Circuit and our Court shows that these courts have treated the various iterations of this fourth prong as equivalents and interchangeably.  *See*, *e.g.*, *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995) (reciting the fourth element of a prima facie case as "replaced by a younger person" and stating that it "may also be shown by circumstantial evidence that a plaintiff was treated less favorably than younger employees"); *see also Vincson v. Aurora Mental Health*, No. 06-cv-00373-MSK-MJW, 2007 WL 1491265, at *3

(D. Colo. May 21, 2007) (one of the prima facie elements requires plaintiff to show "[t]he termination took place under circumstances giving rise to an inference of discrimination (*i.e.*, she was replaced by someone who was younger than 40 . . . )." (citation omitted)); *Lucas v. Miami Cnty. Bd. of Comm'rs*, No. 99-2400-KHV, 2000 WL 968806, at *10 (D. Kan. July 6, 2000) (stating the fourth element requires plaintiff to show that he was "replaced by a younger person (or discharged under circumstances giving rise to an inference of discrimination on the basis of age)." (citation omitted)).  Regardless of the precise wording used to express this fourth prong, the Court concludes that plaintiff has not established a prima facie case of age discrimination.

First, the Court agrees with defendant that plaintiff has not shown that a younger person replaced him.  The record contains no evidence even identifying plaintiff's replacement, much less establishing that the replacement was younger.

Second, the summary judgment evidence, even when viewed in the light most favorable to plaintiff, fails to demonstrate that plaintiff was treated less favorably than younger employees. Plaintiff points to evidence that, between January 1, 2010 and December 31, 2013, defendant terminated ten employees in whole or in part for violating its break policy.  Of those employees, all but two were at least 45 years old when discharged and two were in their sixties.[2]  The average age of the terminated employees was approximately 46.5 years old.  While statistical data showing an employer's pattern of conduct toward a protected class can create an inference of discrimination, "'[s]tatistics taken in isolation are generally not probative of . . .

---

[2]      Plaintiff also argues that his termination was similar to the facts involving a 60-year-old employee who was terminated in 2009 for violating the break policy.  However, no evidence in the record describes the circumstances of this other employee's termination, and, thus, the Court cannot consider this information in deciding summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A) (a party asserting a fact must cite to particular parts of materials in the record); *see also* D. Kan. Rule 56.1(b)(2) (the party opposing summary judgment must set forth facts supported by references to the record).  Moreover, even if the information asserted by plaintiff is true, the evidence does not show that defendant treated plaintiff less favorably than *younger* employees.

discrimination,' . . . ." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1114–15 (10th Cir. 2007)

(citing *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991) and quoting *Jones*, 54

F.3d at 632).  Here, plaintiff's statistical evidence is insufficient to create an inference of age

discrimination for several reasons.

For one, plaintiff's data only provides the ages of ten employees terminated for violations

of the break policy.  Plaintiff fails to provide other information that would allow the Court to

draw an inference of age discrimination from this evidence such as the size or ages of the entire

employee population, the ages of employees who were terminated for other policy violations, or

the ages of similarly situated employees who were *not* terminated for violating the break policy.[3]

Importantly, without information identifying similarly situated younger employees who violated

the break policy but were not terminated, plaintiff's statistical evidence does not show that

defendant treated plaintiff less favorably than younger employees.  Moreover, plaintiff fails to

eliminate nondiscriminatory explanations for the numerical disparity by showing disparate

treatment between similarly situated individuals.  *Fallis*, 944 F.2d at 746 ("a plaintiff's statistical

evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment

by showing disparate treatment between *comparable* individuals."); *see also Howard*, 136 F.

App'x at 113 (holding that plaintiff failed to establish a prima facie case of age discrimination

because his statistics did not include a comparative analysis of similarly situated individuals).  In

addition, plaintiff's sample size of ten employees is too small to provide reliable statistical

results.  *See Fallis*, 944 F.2d at 746 (a statistical sample of nine "carries little or no probative

---

[3]     The Court recognizes that plaintiff denies that he violated the break policy.  But the uncontroverted evidence shows that defendant received a complaint about plaintiff's break time use, conducted an investigation, and concluded that plaintiff had violated break policy.  Plaintiff provides no evidence of other employees who were found by defendant to have committed violations of the break time policy, similar to those that defendant concluded plaintiff had committed, but were not terminated from their employment.

force to show discrimination.").  The Court therefore cannot draw an inference of age discrimination from plaintiff's statistical evidence.

Finally, the remaining evidence cited by plaintiff, even when viewed in the light most favorable to plaintiff, fails to show that his termination took place under circumstances giving rise to an inference of age discrimination.  Plaintiff first argues that the lack of specificity in the witness testimony and statements about plaintiff's behavior shows an inference of age discrimination.  But plaintiff cites no evidence showing that any of the witnesses harbored an animus against plaintiff because of his age, and the Court cannot draw such an inference based on the uncontroverted facts.  It is uncontroverted that Mr. Nease complained about plaintiff's abuse of the break policy, which in turn caused the company to monitor plaintiff's breaks. Plaintiff fails to show any facts from which a rational jury could conclude that either Mr. Nease's complaints or his statements about an altercation between plaintiff and another employee on April 10, 2013, resulted from age bias.

Plaintiff also complains about the specificity of Mr. Moyer and Mr. Kilgore's testimony, but the Court fails to see how these witnesses' testimony could support an inference of age discrimination.  Mr. Moyer testified that he collected information about plaintiff's use of break time and met with his supervisor and the head of human resources to discuss that information. Mr. Kilgore testified that he spent more than two hours monitoring plaintiff's use of the break room during a particular shift, and he specifically remembered observing plaintiff taking his breaks in the break room at the same table.  If anything, Mr. Kilgore's testimony was specific about plaintiff's violation of the break policy.

Plaintiff next argues that he has demonstrated an inference of age discrimination because: (1) two of the witnesses involved in plaintiff's termination had never before been involved with a

termination based on violation of the break policy; and (2) defendant's legal counsel participated in a conversation about the decision to terminate plaintiff.  Defendant refers to these two facts as "innocuous" and argues that they do not advance plaintiff's age discrimination claim (Doc. 43 at 4).  The Court agrees.  Plaintiff fails to connect these facts with any evidence that could allow a jury to draw an inference of discrimination based on age.

Plaintiff also argues that defendant selectively uses the break policy by enforcing it only when someone complains, and that defendant used the break policy in this case to terminate plaintiff because of his age.  Again, plaintiff fails to tie this allegation to any evidence of age discrimination.  Plaintiff provides no evidence that defendant actively seeks out violations of the break policy by older employees or disregards complaints about younger employees who violate the break policy.  Plaintiff also fails to cite evidence about other investigations into break policy violations that would demonstrate an inference of age discrimination in plaintiff's termination. In this record, the Court cannot find any evidence from which a jury could infer that defendant's enforcement of the break policy was discriminatory based on age.

Plaintiff lastly argues that he had never faced any complaints of excessive breaks during his 35 years of employment before the complaint leading to his termination, and he was never informed about that complaint (or given an opportunity to defend against the allegation that he was taking excessive breaks).  Again, plaintiff cites no evidence to connect these facts to some evidence of age bias.  Without such evidence, plaintiff relies only on his own speculation to find an inference of age discrimination.  This will not suffice to establish a prima facie case of age discrimination, and, therefore, the Court grants summary judgment against plaintiff's ADEA claim.

## B.  Title VII Prima Facie Case

Title VII prohibits employers from discharging or otherwise discriminating against an individual based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of national origin discrimination under Title VII, a plaintiff must show that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (citing *Burdine*, 450 U.S. at 253); *PVNF, L.L.C.*, 487 F.3d at 800 (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)).

For purposes of summary judgment only, the parties do not dispute that plaintiff can establish the first and second prong of the prima facie test.  Defendant argues, however, that plaintiff has failed to marshal facts that could satisfy the third prong by showing that his termination occurred under circumstances giving rise to an inference of national origin discrimination.  A plaintiff may show circumstances sufficient for this part of the test in a variety of ways, including: "'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . , preferential treatment given to employees outside the protected class . . . or, more generally, upon the timing or sequence of events leading to plaintiff's termination.'"  *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (quoting *Chertkova v. Conn. Gen. Life Ins.*, 92 F.3d 81, 91 (2d Cir. 1996)).

Here, plaintiff argues he was subjected to derogatory comments made by his coworkers several years before his termination, which, he contends, gives rise to an inference of national original discrimination in his termination.  Plaintiff testified that, about five years ago, a coworker once called him a derogatory name and used another derogatory name on fewer than

18

five occasions.  Plaintiff immediately reported the coworker's comments to his supervisor, Mr. Unruh.  In response, Mr. Unruh laughed, but he also had a talk with the coworker and made the coworker apologize to plaintiff for the comments.  Plaintiff also alleges that another coworker referred to him as a "dumb Mexican" behind his back.

These isolated comments made by non-decisionmakers are not sufficient to establish an inference of discrimination.  *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1184 (10th Cir. 2006) (isolated racial comment made by only one of the four decisionmakers in a time remote from the termination was insufficient to show that the termination was pretext for discrimination); *see also Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.  [Plaintiff] must demonstrate a nexus exists between these allegedly discriminatory statements and the [employer's] decision to terminate [him]." (citations omitted)).  In contrast to the remark in *Antonio*, none of the *decisionmakers* in plaintiff's termination made derogatory comments about plaintiff's national origin.  Only one of the decisionmakers, Mr. Unruh, knew about these comments, but plaintiff concedes Mr. Unruh promptly addressed his complaint by talking to the employee and making him apologize to plaintiff.   Also, like the comments in *Antonio*, the comments alleged by plaintiff occurred remote in time from plaintiff's termination.  Plaintiff fails to provide any other evidence to connect the termination decision to these isolated remarks made by non-decisionmakers.  Thus, no rational jury could infer from these comments that plaintiff's termination was based on national origin discrimination.  *See Antonio*, 458 F.3d at 1184 (no reasonable trier of fact could find pretext in defendant's reason for terminating plaintiff based on an isolated racial remark).

Plaintiff next relies on the statistical data showing that defendant disciplined twenty-one employees, with four employees receiving discipline on multiple occasions, for abusing the break policy between January 1, 2009 and December 31, 2013.  All of the employees who received discipline short of termination were Caucasian.  Plaintiff's reliance on these statistics is flawed for the same reasons discussed in the ADEA analysis.  Most notably, plaintiff fails to provide any evidence showing that defendant did not discipline or terminate any employees outside the protected class for similar violations of the break policy.  Plaintiff's statistics therefore do not raise an inference of national origin discrimination in his termination.

Finally, plaintiff relies on the same evidence that he used to support his ADEA claim: (1) the lack of specificity in the witness testimony about plaintiff's behavior, particularly Mr. Moyer and Mr. Kilgore; (2) the lack of specificity in Mr. Nease's statements about the April 10, 2013 incident; (3) two of the witnesses involved in plaintiff's termination had never before been involved with a termination based on violation of the break policy; and (4) defendant had legal counsel on the phone during a conversation about the decision to terminate plaintiff's employment.  For the same reasons discussed above, these facts, even when viewed in the light most favorable to plaintiff, cannot support a finding by a jury that plaintiff's termination occurred under circumstances giving rise to an inference of national origin discrimination. Plaintiff fails to connect any of these facts with some evidence of a discriminatory animus based on plaintiff's national origin.  Instead, plaintiff's assertion that these facts create an inference of discrimination is based only his speculation which is insufficient to establish a prima facie case of discrimination under Title VII.  Therefore, the Court grants summary judgment in favor of defendant against plaintiff's Title VII claim.

### C.  ADA Prima Facie Case

The ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability . . . ."  42 U.S.C. § 12112(a).  To establish a prima facie case of discrimination under the ADA, a plaintiff must show that:  "(1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without accommodations; and (3) he was terminated 'under circumstances which give rise to an inference that the termination was based on [his] disability.'"  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997)).

Defendant concedes for summary judgment the first two parts of the this test, *i.e.*, that plaintiff is disabled and qualified to perform the essential functions of his job with or without reasonable accommodation.  Defendant argues, however, that plaintiff cannot establish the third part of this test because he cannot show that he was terminated under circumstances giving rise to an inference of disability discrimination.  To establish the third element of the prima facie test, a plaintiff "must show a nexus, or 'at least a logical connection' between his disability and the termination."  *Dewitt v. Sw. Bell Tel. Co.*, ___ F. Supp. 2d ___, 2014 WL 3955356, at *4 (D. Kan. Aug. 13, 2014) (quoting *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 558 (10th Cir. 1996)).

Plaintiff asserts that defendant terminated his employment because he is "old and sick." But the "mere fact" that a plaintiff has a medical condition of which a decisionmaker is aware "is not affirmative evidence that the disability was a determining factor in defendant's decision" to terminate the plaintiff.  *Markham v. Boeing Co.*, No. 10-1363-MLB, 2011 WL 6217117, at *5 (D. Kan. Dec. 14, 2011) (explaining that an plaintiff is required to present evidence that disability was a "determining factor" in the termination decision (citing *Morgan*, 108 F.3d at

21

1324)).  Instead, plaintiff must come forward with "some affirmative evidence that disability was a determining factor in the employer's decision."  *Morgan*, 108 F.3d at 1323 (citation omitted).

First, plaintiff argues that defendant's accommodations of his medical condition show an inference of discrimination because defendant initially hesitated to accommodate plaintiff's requests to use a golf cart to move around the facility.  He also discounts defendant's letting him use a chair at work as not an accommodation at all because everyone had access to chairs at the facility.  But plaintiff admits that defendant made every accommodation that plaintiff requested, and with those accommodations plaintiff managed his kidney failure and diabetes effectively.  The evidence cited by plaintiff, when viewed in the light most favorable to him, does not establish a nexus between plaintiff's medical condition and his termination.

Second, plaintiff argues that he has established an inference of discrimination because defendant enforced its break policy arbitrarily as a means to terminate him because of a disability.  He asserts that defendant does not monitor employees' break time use unless someone complains, no one had ever complained about plaintiff taking excessive breaks during his 35 years of employment before the complaint leading to his termination, he was not informed about that complaint or given an opportunity to defend against the allegation that he was taking excessive breaks, and he received positive evaluations in the years preceding his termination with no reference to violations of the break policy.  The Court already has addressed these arguments and rejects them for the same reasons here because plaintiff has failed to present any evidence connecting defendant's actions to plaintiff's medical condition.  Plaintiff has not come forward with any evidence that defendant actively sought out plaintiff for violating the break policy because of his medical condition.  Moreover, the uncontroverted evidence shows that

defendant terminated nine other employees in whole or in part for violating the break policy, and none of those employees had known disabilities.

Plaintiff also denies that he exceeded his break times and that, if confronted by defendant, he would have explained that he was using the restroom because of his medical condition and not exceeding his breaks.  However, the uncontroverted facts establish that defendant reasonably believed that defendant had violated the break policy and acted in good faith on that belief.  *See Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) ("[T]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." (citation and internal quotation marks omitted)).  After receiving the complaint about plaintiff, defendant monitored plaintiff's usage of break time and determined that he was, in fact, exceeding his break times. Indeed, Mr. Kilgore, one of the managers who monitored plaintiff's breaks, specifically recalled seeing plaintiff taking his breaks in the break room at the same table and exceeding the break times allotted under the policy.  In addition, plaintiff admits that he may have exceeded his break times, and he concedes that it was not unreasonable for defendant to conclude that he violated the break policy because he occasionally exceeded his allotted break times.[4]  Moreover, plaintiff provides no evidence that defendant has investigated similarly-situated employees without disabilities for violations of company policy, confronted those employees about the allegations of policy violations, and given them an opportunity to deny those allegations.  Plaintiff admits

---

[4]     In making these observations under the prima facie analysis, the Court does not conflate plaintiff's discrimination claim with defendant's proffered explanation.  *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (citation omitted).  The Court recognizes that, at the prima facie stage, "a plaintiff is only required to raise *an inference of discrimination*, not dispel the non-discriminatory reasons subsequently proffered by the defendant." *Id.* (citation and internal quotation marks omitted).  Here, though, plaintiff claims he has raised an inference of discrimination because defendant did not confront him with the allegations that he was violating the break policy, but if it had, plaintiff would have denied them.  As explained above, this evidence does not show that plaintiff's termination took place under circumstances giving rise to an inference of discrimination.

that he has no knowledge about how the termination decisionmaking process works at defendant, and he provides no evidence showing that the circumstances surrounding his termination differed from the termination process for similarly-situated employees without disabilities such that it raises an inference of discrimination.

The Court is mindful that plaintiff's burden to establish a prima facie case is not onerous, but it also is "not empty or perfunctory." *Morgan*, 108 F.3d at 1323–24 (citations and internal quotation marks omitted). Plaintiff is required "to present some affirmative evidence that disability was a determining factor in the employer's decision." *Id.* at 1323 (citation omitted). Here, the evidence before the court lacks any basis for an inference that defendant terminated him because of a disability. There is no evidence of any derogatory comments about his medical condition or any other specific circumstances giving rise to an inference of discrimination. Thus, the summary judgment evidence, even when viewed in the light most favorable to plaintiff, fails to establish the third element of a prima facie case, and defendant is entitled to summary judgment on plaintiff's ADA claim.

### D.  FMLA Prima Facie Case

It is unlawful under the FMLA for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice" prohibited by the FMLA. 29 U.S.C. § 2615(a)(2). To state a prima facie case of FMLA retaliation, a plaintiff must show:  (1) he engaged in a protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the adverse action. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (citations omitted).

For purposes of summary judgment, defendant assumes plaintiff can satisfy the first two elements of the prima facie test but argues that his claim fails because he cannot establish a basis for a rational jury to find a causal connection between the protected activity and the adverse action.  Indeed, plaintiff testified that he does not have any reason to believe that he was terminated on April 15, 2013, because he had taken FMLA leave in 2011 and 2012.  The uncontroverted evidence shows that plaintiff made three requests for FMLA leave, and plaintiff admits that his discussions with defendant's management about FMLA were "very positive."[5] Defendant granted plaintiff intermittent FMLA leave from February 2011 through February 2012 for kidney failure, but denied his two subsequent requests for FMLA leave because he had already exhausted his leave when he made one request and he did not submit a medical certification with the other request.  Plaintiff does not allege that either denial of FMLA leave was inappropriate or unlawful.

Plaintiff admits that six months passed between the last denial of FMLA leave and his termination.  This temporal proximity, alone, does not establish a causal connection.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (noting that under Tenth Circuit precedent a three-month period, standing alone, is insufficient to establish causation). However, plaintiff claims that two additional facts, when coupled with the temporal proximity, establish a causal connection between his request for FMLA leave and his termination.

First, plaintiff relies on the fact that three of the ten employees whom defendant terminated in whole or in part for violating the break policy between January 1, 2010 and December 31, 2013, had requested FMLA leave within a year before their discharge.  But these statistics suffer from the same deficiencies as the other statistics discussed above.  They are presented in a vacuum with no reference to the overall number of requests for FMLA leave at the

---

[5]        Plaintiff stipulated to this fact in the Pretrial Order (Doc. 32 at ¶ 2.a.24).

facility, the number of people who retained their employment after requesting FMLA leave, or the specific circumstances surrounding the other terminations. Without such information, plaintiff has not presented evidence from which a rational jury could find a connection between plaintiff's FMLA leave and his termination.

Second, plaintiff asserts that he has demonstrated a causal connection by the fact that his work was recalled after he returned from FMLA leave in 2012. Plaintiff never experienced recalls before his FMLA leave, and he believes that a coworker was sabotaging his work. But plaintiff's assertions here are based only on his beliefs, not on any affirmative evidence showing a connection between his FMLA leave and termination. There is also no evidence that the alleged sabotage played any role in plaintiff's termination for violating the break policy.

Because plaintiff has failed to show a basis for a rational jury to conclude that a causal connection existed between his FMLA leave and termination, he cannot establish a prima facie case of FMLA retaliation. The Court therefore grants summary judgment against plaintiff's FMLA claim.

### E.  Pretext

Even if plaintiff could set forth sufficient evidence to support a prima facie case of discrimination under either the ADEA, Title VII, ADEA, or FMLA, summary judgment is still appropriate because plaintiff has failed to present any facts that could support an inference of pretext. Under the *McDonnell Douglas* burden-shifting framework, if plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Khalik*, 671 F.3d at 1193 (citation omitted). Defendant has done so. It had shown that it terminated plaintiff for violating the company's break policy while he was on Final Written Warning.

26

This showing shifts the burden back to plaintiff to show that the employer's explanation is pretext.  *Id.* (citation omitted).  A plaintiff may demonstrate pretext by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Morgan*, 108 F.3d at 1323 (citations and internal quotation marks omitted).  But "'mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'"  *Id.* (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).

The Court already has addressed all of the evidence that plaintiff relies on to support pretext.  As explained above, none of that circumstantial evidence can support a prima facie case of discrimination or retaliation for any of plaintiff's four claims.  Likewise, this evidence is insufficient to raise a genuine dispute of material fact that the stated reason for plaintiff's termination was a pretext for a discriminatory or retaliatory motive.[6]  Thus, even if plaintiff could establish a prima facie case to support any of his four claims, the Court would grant summary judgment in favor of defendant because the summary judgment record contains no facts that support a rational finding of pretext.

---

[6]     The Tenth Circuit recognizes there is "some tension" in its case law about what a plaintiff must show as part of his prima facie case of discrimination:  "Some cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat the surrounding circumstances as part of the analytically subsequent inquiry into the employer's stated reason for the challenged action and the plaintiff's opposing demonstration of pretext."  *PVNF, L.L.C.*, 487 F.3d at 800 n.5 (citing *Sorbo*, 432 F.3d at 1173 & n.5).  However, "regardless of whether [the Court] analyze[s] the plaintiff's evidence 'in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the [C]ourt correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result.'"  *Id.* (quoting *Sorbo*, 432 F.3d at 1173).  Here, the Court determines that regardless of whether it analyzes it by reference to the prima face case or the pretext inquiry, plaintiff's "evidence of discrimination/pretext fails as a matter of law," and summary judgment in favor of defendant is warranted.  *Id.* (quoting *Sorbo*, 432 F.3d at 1173).

**IV.     Conclusion**

Defendant has shown that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law against plaintiff's ADEA, Title VII, and ADA discrimination claims and his FMLA retaliation claim.  Consequently, the Court grants summary judgment for defendant on all of plaintiff's claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 33) is granted.

**IT IS SO ORDERED.**

**Dated this 6th day of February, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree_____**
**Daniel D. Crabtree**
**United States District Judge**
